IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ALANA BAILEY, ) | CIVIL ACTION NO. 2:24-cv-3883-DCN-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **COMPLAINT** |
| ) | (Jury Trial Demanded) |
| HIOSSEN, INC., OSSTEM, INC., and OSSTEM, ) | |
| IMPLANT COMPANY, LTD. ) | |
| ) | |
| Defendant. ) | |
| ) | |

## INTRODUCTION

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C., §§ 2000e *et seq.* (hereinafter "Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (hereinafter "ADEA"), based on age discrimination, national origin discrimination, race discrimination, sex discrimination and retaliation.

## PARTIES

2. The Plaintiff, Alana Bailey (hereinafter "Bailey or "Plaintiff"), is a 56-year-old, female, Caucasian, American citizen and resident of Charleston County, South Carolina.

3. Defendant, Hiossen, Inc. (hereinafter "Hiossen"), is a corporation, serving as the American subsidiary of a Korean-based dental implant manufacturer, organized and existing under the laws of a state other than South Carolina, with its principal place of business in a state other than South Carolina. Upon information and belief, Defendants Osstem, Inc. and Osstem Implant Co., Ltd. are corporations organized and existing under the laws of states other than South Carolina, which have their principal places of business in states other than South Carolina, who are the parent companies of Hiossen, Inc. and at all times relevant jointly employed Plaintiff. Defendants transact substantial

1

business in South Carolina. Defendants are employers in an industry affecting commerce, who employ more than 500 employees, and are "employers" within the meaning of Title VII and the ADEA. At all times relevant, Defendants employed Plaintiff in South Carolina and North Carolina.

## JURISDICTION, VENUE, AND TRIAL BY JURY

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1332, 28 U.S.C. §§ 1343(3) and 1343(4), 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 623(a). Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391, because this is the judicial district where Plaintiff would have worked, but for the unlawful employment practices of the Defendant. Plaintiff requests a trial by jury for all issues which may be submitted to a jury.

## CONDITIONS PRECEDENT

5.      The Plaintiff timely filed an administrative charge with the Equal Employment Opportunity Commission (EEOC).

6.      The EEOC investigated, found that the Defendant had discriminated against the Plaintiff because of her national origin, race, and/or sex when she was denied promotional opportunities, denied sales opportunities and other beneficial terms and conditions of employment, put on a PIP (Performance Improvement Plan), and discharged. Further, the EEOC found that the Defendant took materially adverse action against the Plaintiff because she engaged in protected activity, thereby retaliating against her.

7.      The EEOC attempted conciliation with Defendant but was unsuccessful.

8.      The EEOC issued a "Notice of Right to Sue" dated April 10, 2024. That document is attached hereto as Exhibit A.  This lawsuit is timely filed.

## STATEMENT OF FACTS

9. Bailey was hired by Defendant in March of 2017 as an Implant Specialist sales representative in the Southeast Region, based out of the Charlotte, North Carolina office.

10. She had an extensive background in the sale of dental implant materials and similar products. Plaintiff had sold products in this area since 2008 and had contacts in the industry that made her a desirable candidate for Hiossen.

11. Defendants are Korean owned and based corporations that manufacture and sell quality dental implants and related products. Plaintiff became aware of the company's stated "commitment" to prohibit unlawful discrimination in a policy proclaiming that Hiossen adheres to the requirements of Title VII of the Civil Rights Act, as well as other anti-discrimination statutes, when she was hired. Plaintiff was required to acknowledge receipt of Defendant's policies.

12. Plaintiff was excited about this new opportunity. She was very confident in her knowledge of the products and her established relationships with previous clients.

13. After Plaintiff was hired, Defendant's management instituted set territories based on zip codes. Plaintiff was assigned the entire state of South Carolina and zip codes 28173 and 28277 in North Carolina as her territory.

14. She established accounts in South Carolina, including one in Charleston, which was about three hours away from her home. Plaintiff learned that starting accounts at Hiossen was much more difficult than at her previous sales positions because Defendant requires dentists to purchase a contract or pay full retail at a much higher rate than Defendant's competitors. In this way, Defendant's business model was much different than Plaintiff's former positions.

15. Soon after the assignment of territories, Plaintiff began to feel frustration with how the territories were designated. She was so much closer to the Charlotte, North Carolina area than her

male manager, Tim Johnson (hereinafter "Johnson"). However, Johnson held those territories for himself. Hiossen used a "Korean" style of management that allowed managers to participate in sales and receive commissions for the same. Essentially, Plaintiff's manager was in competition with her for sales. Plaintiff also noticed that other desirable territories were assigned to younger, Korean salespeople as well.

16. Plaintiff retained many contacts in the areas that were assigned to others, especially in the Charlotte region. The South Carolina territory that was assigned to her caused her to drive at least two hours to several of her accounts. She was, then, required to drive four or more hours a day to see customers. Plaintiff was a single mother of three teenaged children at the time and the amount of time she was driving away from her home was excessive. She asked on several occasions for additional territories in the vicinity of her home but was denied.

16. Despite the hurdles, Plaintiff made several sales and was meeting all of her metrics during the first year and a half to two years of her employment.

17. During this time period, Plaintiff attended trainings for the Southeast Region – an area that covered Washington, D.C. to Georgia. At each training, Plaintiff made note of a steady increase in the amount of Korean and/or Asian salespeople. Eventually, the salesforce in the region surpassed 80% of individuals from Korean and/or Asian descent.

16. In January of 2019, Defendant implemented a new manner of tracking the success of salespeople that was presented as a "Korean Model" of business. Around that time, the 28277 zip code was taken away from Plaintiff. This hurt her sales significantly, as she had just closed sales with two specialists in the territory. The Regional Manager, Daniel Kang (hereinafter "Kang"), who was Johnson's direct manager and is Korean, made the decision to remove the territory from Plaintiff.

17. Plaintiff continued to hit her sales goals in early 2019. However, by April 2019, Kang began to target Plaintiff directly. He would remove sales from her accounts and place them with younger Korean employees or direct them to Johnson. This began as small, piecemeal acts and evolved into a consistent taking of opportunities from Plaintiff.

18. As a result, her sales suffered greatly. Plaintiff was essentially relegated to living on her base salary alone while the Korean employees chosen by Kang were enriched with commissions that should have been earned by Plaintiff.

19. The manufactured decline in her sales was noted by management – specifically Kang. Kang then instructed Johnson to issue a verbal warning to Plaintiff in July of 2019.

20. Johnson's manner of treating Plaintiff became hostile around this time. Johnson managed several women and was consistently hostile to all while treating men with respect and dignity. Johnson called Plaintiff one Friday evening to tell her to "look for another job" because she may be getting terminated on Monday. The weekend was horrible for Plaintiff. She barely slept and dealt with incredible anxiety for three days. This is one example of the many times Johnson's screaming and cursing caused negative emotional response from Plaintiff.

21. Plaintiff sought medical treatment for the anxiety and depression she faced because of the treatment by Johnson and Kang. On a few occasions, Plaintiff visited the emergency room with chest pains. She was diagnosed with anxiety and panic attacks. Plaintiff was prescribed anxiety medications. She believed she was the only female being harassed, however, she later learned that Johnson and Kang treated women – especially Caucasian American women – with consistent contempt.

22. Through the summer of 2019, Plaintiff's accounts were continually taken away from her. The commissions from an oral surgeon that she had worked with for years and who had requested

to only work with her were being diverted to Johnson and Korean employees.

23. By September 2019, the Korean Human Resources manager, Sung Ha (hereinafter "Ha"), required Johnson to issue a written warning and a Performance Improvement Plan that was authored by Kang. Ha emailed Johnson with the mandate and Johnson was given a PIP created by Kang for implementation.

24. In October of 2019, Johnson called Plaintiff after 10:00 pm while she was on vacation with her family and berated her regarding her sales numbers. She was devastated by this because she had been working incredibly hard and her sales were being ripped away from her during that time period. She was incredibly embarrassed to have to deal with the harassment of Johnson during a family celebration. Around that time, Johnson also texted a co-worker regarding confidential information of Plaintiff.

25. These actions prompted Plaintiff to seek assistance from Hiossen Human Resources again. She spoke with Dan Darabaris, an HR employee, about the harassment and the reassignment of sales to Johnson and Korean employees over and over again. Darabaris promised to "check into" the matters she complained about. Plaintiff never heard from him again.

26. On or around October 24, 2019, another written warning and PIP were issued to Plaintiff in the same manner as the previous month. Ha instructed Johnson to issue the warning and Kang provided the PIP. The warning and plan were signed by Plaintiff on November 4.

27. Plaintiff then sought legal advice. She hired a law firm who wrote a demand letter to Hiossen on November 13, 2019. The letter, attached hereto as Exhibit B and incorporated herein by reference, explains that Plaintiff's rights under Title VII and under the ADEA were being violated. The letter describes some of the hostility that Plaintiff was facing at the time and seeks an amicable resolution to the matter.

28. At the time of the letter, Plaintiff was facing the most hostility she had incurred up to that point, and the removals of any opportunity for her to succeed continued unrelentingly. December of 2019 was the worst sales month for Plaintiff in her time with Defendant. This was a direct result of the actions of Hiossen's management's removal of the territories and sales that she should have had the chance to work.

29. In January, Plaintiff filed a charge of discrimination with the EEOC. Then, on January 27, 2020, Plaintiff's law firm forwarded a copy of the charge and a notice of representation to EEOC. That communication is attached hereto as Exhibit C and incorporated herein by reference. The EEOC is required by law to inform the employer of a filed charge within ten days.

30. On February 7, 2020, just ten days after the filing with the EEOC, and just days after Hiossen's notification of the charge, she was terminated from her position with Defendant. The letter ending her employment is attached hereto as Exhibit D and incorporated herein by reference. Hiossen claims that her failures in performance led to the termination. However, Defendant's actions in removing her accounts and swapping territories falsely produced the lack of sales metrics.

31. In fact, Defendant terminated Plaintiff in retaliation for her complaints regarding the pervasive discrimination she faced during her time with Hiossen and for her protected acts, including complaints about the same and the filing of a charge with the EEOC. The timing of the termination makes the retaliatory motive crystal clear.

32. After her termination, the EEOC found that Hiossen discriminated and retaliated against Plaintiff on multiple grounds. The determination by the EEOC is attached hereto as Exhibit E and incorporated herein by reference.

33. In the aftermath of the illegal acts of Defendant, Plaintiff has continued to deal with anxiety

and depression because of Hiossen's management. She was significantly set back in her career and was damaged and continues to be damaged by Defendants acts.

## FOR A FIRST CAUSE OF ACTION

### (National Origin Discrimination)

34. Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

35. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by discriminating against her with respect to the terms, conditions and privileges of her employment, including the termination of the Plaintiff on account of her national origin and by depriving her of her employment opportunities; all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C., §§ 2000e *et seq*.

36. The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

## FOR A SECOND CAUSE OF ACTION

### (Race Discrimination)

37. Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

38. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by discriminating against her with respect to the terms, conditions and privileges of her employment, including the termination of the Plaintiff on account of her race and by depriving her of her employment opportunities; all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.,

§§ 2000e *et seq*.

39. The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

## FOR A THIRD CAUSE OF ACTION

### (Age Discrimination)

40. Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

41. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by discriminating against her with respect to the terms, conditions and privileges of her employment, including the termination of the Plaintiff on account of her advanced age and by depriving her of her employment opportunities; all in violation of §4(a) of the Age Discrimination in Employment Act, 29 U.S.C. §623(a).

42. The actions and omissions of Defendants proximately caused actual damages to Plaintiff. Additionally, the actions and omissions of Defendants were willful, malicious and in bad faith, and Plaintiff is entitled to liquidated damages.

## FOR A FOURTH CAUSE OF ACTION

### (Sex Discrimination)

43. Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

44. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by harassing her and discriminating against her with respect to the terms, conditions and privileges of her

employment, including the termination of the Plaintiff on account of her sex and by depriving her of her employment opportunities; all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C., §§ 2000e *et seq*.

45. The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

## **FOR A FIFTH CAUSE OF ACTION**

### **(Retaliation in Violation of Title VII)**

46. Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

47. By acts and practices alleged above, and by other related acts and practices, Defendant has willfully retaliated against Plaintiff by taking adverse and harmful actions against Plaintiff for her lawful and protected reports of harassment and discrimination, up to and including terminating Plaintiff immediately after learning of her filing her EEOC Complaint, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C., §§ 2000e *et seq*.

48. The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

## **FOR A SIXTH CAUSE OF ACTION**

### **(Retaliation in Violation of the ADEA)**

49. Plaintiff reavers all preceding and subsequent paragraphs as if set forth fully herein.

50. By acts and practices alleged above, and by other related acts and practices, Defendant has willfully retaliated against Plaintiff by taking adverse and harmful actions against Plaintiff for her lawful and protected reports of harassment and discrimination, up to and including terminating

Plaintiff immediately after learning of her filing her EEOC Complaint, all in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

51.    The actions and omissions of Defendants proximately caused actual damages to Plaintiff. Additionally, the actions and omissions of Defendants were willful, malicious and in bad faith, and Plaintiff is entitled to liquidated damages.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against the Defendant, as follows:

1.    For all relief available under Title VII, including back pay, front pay, compensatory damages, punitive damages, costs, and attorney's fees;

2.    For all relief available under the ADEA, including back pay, front pay, liquidated damages, costs and attorney's fees;

3.    For the Plaintiff's costs and a reasonable attorney's fees, pursuant to all applicable provisions of law, and for such other and further relief as the Court deems proper, just and equitable.

GIBBS & HOLMES

__s/Tim Lewis__
Allan R. Holmes (ID#1925)
Timothy O. Lewis (ID# 9864)
Allan Riley Holmes, Jr. (ID#11115)
171 Church Street, Suite 110
Post Office Box 938
Charleston, S.C.  29402
(803) 722-0033

ATTORNEYS FOR THE PLAINTIFF

Charleston, South Carolina

July 9, 2024